No. 2648.

## ALEX ANDERSON AND JOE WOODS *v.* THE STATE.

1. NEGLIGENT HOMICIDE—INDICTMENT.—See the statement of the case for the substance of an indictment *held* sufficient to charge the offense of negligent homicide.

2. SAME—WITNESS.—A person charged, either in the same or another indictment, with participation in the offense on trial, is not competent to testify in behalf of the accused. It appears in this case that the

witness proposed by the defense was indicted, by an incorrect name, for the same offense. *Held* that the proposed witness was properly held incompetent

3. NEGLIGENCE BY OMISSION consists in the omission to perform an act with the performance of which the party is especially charged, and there can be no criminal negligence in the omission to perform an act which it is not the express duty of the party to perform. Under this rule brakemen on a railway train, whose duty is shown to pertain in no degree to the operation of a locomotive, nor to the watching of the railway track, nor the sounding of the danger signal, can not be held liable for the killing of a person by the locomotive, operated by the engineer and fireman, upon whom the duty of operating it exclusively devolved. See the statement of the case for evidence *held* insufficient to support a conviction for negligent homicide.

APPEAL from the District Court of Polk. Tried below before the Hon. Edwin Hobby.

The conviction in this case was for negligent homicide, and the penalty assessed against each of the appellants was a fine of two hundred and fifty dollars.

The indictment impleaded O. Torgerson, engineer, J. A. DeCogne, fireman, and the appellants as brakemen on engine number eleven of the Houston, East & West Texas Railway Company, charging them with negligent homicide of the first degree, and alleging in substance that on the seventh day of February, 1887, while engaged as workmen in running said engine and tender on said railroad, said Torgerson, DeCogne, Anderson and Woods did back said engine and tender negligently and carelessly, without ringing the bell or blowing the whistle, and without giving any warning, and without first looking to see if any person was likely to be injured thereby, and by said negligence and carelessness one Sing Morgan was struck by said engine and tender so run, and the death of said Morgan was caused by said negligence and carelessness—the said Morgan being at the time in a position to be struck by said engine and tender which fact would have been known by said Torgerson, DeCogne, Anderson and Woods if they had used that degree of care and caution which a man of ordinary prudence would use under like circumstances, there being then and there an apparent danger of causing the death of said Morgan and of other persons passing on said railroad and highway.

J. D. Kelley was the first witness for the State.  He testified that he was at Hackney's mills, in Polk county, Texas, at the time that the negro child, Sing Morgan, was killed by engine No. 11 of the Houston, East & West Texas Railway Company. He and W. T. Parrish were sitting on the gallery at Hackney's store at the time the killing occurred.  The said gallery was situated very near the track of the said railway.  At the time the child was killed a train of cars had been divided at a point a short distance north of Hackney's store, and the half of it had been hauled to a point beyond a heavy grade south of the store, and the engine was on its way back to get the other part of the train when the child was killed.  The child was run over by the engine and killed at a point on the track about eighty yards north from the gallery of Hackney's store.  Witness first observed the engine backing from the south to the north, when it reached a point between seventy-five and a hundred yards south of the gallery.  He did not hear the rumbling of the engine until it reached within thirty feet of the gallery.  No bells were rung nor whistles sounded at any time during the backing of the said engine, nor was any other signal given.  As the engine passed the point where the witness and Parrish were sitting, the witness observed the engineer in his position.  He did not see the fireman, but saw the defendants, who were brakemen on the train.  One of them was standing on the gangway of the engine and the other was sitting on the wood on the tender attached to the engine.  Either of the said parties by looking down the track could have seen the child in its perilous position.  The witness saw the child just about the time the engine struck and passed over it.  There was nothing on the track to obstruct the view of the parties on the engine and tender, and they could have seen the child in ample time to prevent its death had they kept a lookout.  No cars were attached to the engine at the time.

Cross examined, the witness said that he could have seen the child in time to give warning had he been looking over the track in that direction.  Witness identified a letter exhibited to him as a letter he wrote to M. G. Howe, receiver of the East & West Texas Railway Company.  He had never been paid by Howe not to testify in this case.

W. T. Parrish, for the State, testified substantially to the same facts as Kelley, but stated that he did not see the child until after it was killed.  He was looking another way, when

Kelley remarked: "There is a negro child killed." Had he been looking north he could have seen the child.

On his cross examination, this witness stated that Kelley told him that he, Kelley, had written to Howe, proposing to leave the country, or to fail to testify in this case, for the consideration of five hundred dollars. Witness told Kelley that "he could do as he pleased about it." The witness would not undertake to say whether or not he would have accepted any part of the money, had Kelley secured it.

W. H. Dudley was called by the State, and testified that he did not see the killing, and knew nothing about it until after it occurred. The deceased was a negro child about eighteen months old. The place where passengers and freight were taken on and put off the train, and where the public road crossed the track, was south of the point where the child was killed. No street or road crossed the track at the place of the killing.

The State closed.

Two or three officials of the Houston, East & West Texas Railway testified, for the defense, that the brakemen on their lines had no duties whatever to perform on an engine or tender.

Their duties are well defined, and are performable only on the passenger and freight cars or coaches. The operation of an engine devolves exclusively upon the engineer and fireman, and principally and primarily upon the engineer. He is charged with the duty not only of manipulating or operating the engine, but of keeping a look out over the track and sounding the signals. A heavy grade occupies the space a short distance north and south of Hackney's mills, and it was the custom to divide trains going south at a point north of the mills, and haul them over the grade in sections. The brakemen always accompanied the first section, and rode on the engine back to the section left behind. They had no duties whatever to perform on the engine in returning over the track for the sections left behind.

The defense next introduced in evidence the letter identified by Kelley, which reads as follows:

Corrigan, Polk County, Texas, this May 10, 1887.
*Mr. M. G. Howe:*
It is with pleasure I seat myself to drop you a few lines to let you know that court time air near. That trile will come of.

That negro is goin to sue for 2000 dollars.   If I be a witness he will beet you, for I am the only one that saw the child before it was killed, and if you will pay me 500 dollars I will get out of the way.   W. T. Parrish is gon.   Let me no sune.

J. D. KELLEY.

*R. S. Lovett*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE.   This appeal is from a conviction of negligent homicide of the first degree.   The indictment charges the appellants and two other persons jointly with the commission of the offense.   Appellants only were put upon trial, and the punishment assessed was a fine of two hundred and fifty dollars against each of them.

We think the indictment is a good one.   It follows the statute defining the offense, and alleges all the elements of said offense, setting forth specifically the acts and omissions of the defendants, and alleging that said acts and omissions caused the death of the deceased.   (Penal Code, art. 579.)

It was not error to refuse to permit Ducoing to testify in behalf of the defendants.   It was made to appear by the State that said Ducoing was one of the persons charged jointly with defendants with the same homicide, but charged under a different name, the true name of said Ducoing having been mistaken by the grand jury presenting the indictment.   Said Ducoing was an incompetent witness in behalf of defendants, he being in fact a principal in the offense and in reality but under another name charged as such in the indictment.   (Code Crim. Proc., art. 731.)

As we view the evidence and the law applicable thereto, this conviction is not warranted.   These appellants were brakemen. They had no control whatever of said engine and tender.   They were riding upon the same for the purpose merely of performing their specific duties as brakemen, which duties had no connection with or relation to the homicide.   It was the exclusive duty of the engineer and fireman to operate said engine carefully; to look out for obstructions upon the track; to give signals of danger when necessary.   With these duties appellants were in no way concerned.   They had no right to start the engine in motion, to blow the whistle, to ring the bell, to

stop the engine, or otherwise to control its movements. They performed no *act* which connected them with the death of the child. It is only for a supposed *omission of duty* on their part that they have been convicted of negligent homicide. They omitted to look out for obstructions on the track. They might have seen the child in time to save its life, but they omitted to see him. Or if they did see him they omitted to stop the train, or to signal the engineer to stop it.

Were these *omissions* criminal, within the meaning of the statute defining negligent homicide? We think not, because, to constitute criminal negligence or carelessness, there must be a violation of some duty imposed by law directly or impliedly, and with which duty the defendant is especially charged. Mr. Wharton says: "Omissions are not the basis of penal action, unless they constitute a defect in the discharge of a responsibility with which the defendant is especially invested." (Wharton on Hom., sec. 72.) Again, this author says, in treating of omissions by those charged with machinery, etc.: "The responsibility of the defendant which he thus fails to discharge must be exclusive and peremptory. A stranger who sees that unless a railway switch is turned, or the car stopped, an accident may ensue, is not indictable for not turning the switch or stopping the car. The reason for this is obvious. To coerce, by criminal prosecutions, every person to supervise all other persons and things, would destroy that division of labor and responsibility by which alone business can be safely conducted, and would establish an industrial communism, by which private enterprise and private caution would be extinguished. Nothing can be effectually guarded when everything is to be guarded by everybody. No machinery could be properly worked if every passer by were compelled by the terror of a criminal prosecution to rush in and adjust anything that might appear to him to be wrong, or which was wrong, no matter how it might happen to appear. By this wild and irresponsible interference even the simplest forms of machinery would be speedily destroyed." (Ibid, sec. 80.) And upon the subject of omission to give warning of danger, the same author says: "The test here is, is such notice part of an express duty with which the defendant is exclusively charged? If so, he is responsible for injury which is the regular and natural result of his omission; but if not so bound, he is not so responsible." (Ibid, sec. 81.)

These rules of the common law are not inconsistent with our

statute, but are in harmony therewith, as we construe it. As we understand both the common law and the statute, there can be no criminal negligence or carelessness by *omission* to act, unless it was the especial duty of the party to perform the act omitted. Negligence or carelessness by *omission* presupposes duty to perform the act omitted, and can not, in law, be imputed except upon the predicate of duty.

In this case the evidence is uncontradicted and clear that appellants did not do any act or omit to do any legal duty, with reference to the deceased child. In law they are no more responsible for the death of the child than any other person who was present and witnessed the accident. They were strangers to the transaction, in contemplation of the law, because they were not charged with any duty with respect to it.

We are of the opinion that the judgment of conviction is contrary to the law and the evidence, and therefore said judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered February 2, 1889.