Galen ATWATER, Administrator of the
Estate of Jack Roy Atwater,
Deceased, Appellant,

v.

MATANUSKA ELECTRIC
ASSOCIATION, INC.,
Appellee.

Frances W. ATWATER and Galen Atwater, in their individual capacities and the partnership of Jack Roy Atwater, Galen Atwater and Frances W. Atwater, by whatever name known, Appellants,

v.

MATANUSKA ELECTRIC
ASSOCIATION, INC.,
Appellee.

Nos. S–890, S–891.

Supreme Court of Alaska.

Nov. 7, 1986.
Rehearing Denied Dec. 5, 1986.

Sandra K. Saville and Lynette I. Hotchkiss, Kay, Saville, Coffey, Hopwood & Schmid, Anchorage, for appellants Frances Atwater and Galen Atwater.

Robert C. Erwin, Erwin, Smith & Garnett, Anchorage, for appellant Galen Atwater, Adm'r of the Estate of Jack Roy Atwater, Deceased.

Burton C. Biss, Biss and Holmes, Wasilla, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

In this appeal we are asked to interpret the indemnity provision of the Alaska health and safety statutes regulating activities near high voltage lines. Jack Atwater was electrocuted when he came in contact with a 7200 volt line while working on the roof of a motel owned by him and his family. Galen Atwater, as administrator of Jack's estate, sued Matanuska Electric Association (MEA) for wrongful death. The trial court granted partial summary judgment in favor of the estate on the issue of MEA's negligence. MEA then filed a third-party complaint against the Atwater partnership for full indemnification under AS 18.60.685(b). The trial court granted summary judgment in favor of MEA. We reverse and hold that AS 18.60.-685(b) provides for indemnification only for damages caused by the indemnitor's unlawful activities and not for those caused by the utility's own negligence.

## I. FACTS AND PROCEEDINGS

Galen Atwater, his wife Frances, and son Jack owned Atwater Rentals as equal partners. In early 1977, the partnership purchased a motel located on Eagle River Hill. The motel, now named the Co-Pilot, was moved to its present location at Peters Creek in 1977. It is undisputed that the motel was moved within ten feet of a high voltage line.

The motel's original electrical hookup was completed by the partnership because at the time of the move MEA linemen were on strike. After the strike ended, MEA officials were dispatched to the Co-Pilot Motel to hook up underground electrical service and inspect the meter base. MEA workers observed high voltage lines crossing closely over the corner of the motel's roof, but did not report any problems with the original Atwater hookup or take corrective action to move the wires away from the building.

Over the next three years, and prior to the accident at issue, MEA completed additional electrical hookups to buildings on the Atwater property. MEA foreman Robert Lund testified that he spoke with Jack Atwater about the 7200 volt line crossing closely over the motel's roof. Galen Atwater observed electrical wires within ten feet of the motel roof, but testified that he was unaware of their high voltage.

On May 5, 1980, Jack Atwater planned to replace shingles on the Co-Pilot Motel roof with the help of Timothy Metcalf, an employee of the Atwater partnership. MEA was not notified that anyone would be working on the roof near the high voltage lines.

Metcalf testified that shortly before the accident, Jack had said he would meet him on the roof. Metcalf was in the process of locking up the plumbing and heating store when he heard someone yelling that Jack was on fire. Michael O'Keefe, an emergency medical technician who was in the restaurant adjoining the motel, heard the commotion and went outside to offer assistance. O'Keefe climbed up to the roof and observed Atwater on fire with his right hand on the high tension electrical wire and his body slumped over the neutral wire. He used a garden rake to pry Jack off the wires. Jack died several days later as a

result of injuries sustained from contact with the high voltage wires.

As administrator of his son's estate, Galen Atwater filed a wrongful death suit claiming MEA was negligent in failing to properly maintain and inspect the high voltage lines. Judge Milton Souter granted partial summary judgment for the estate on the issue of MEA's negligence.[1] MEA then filed a third-party complaint against the Atwater partnership and moved for summary judgment against both the partnership and the estate on the basis of the indemnity provision of AS 18.60.685(b). The trial court granted summary judgment for MEA. Both the estate and the partnership appeal.[2]

## II. DISCUSSION

Alaska Statutes 18.60.670–.695 regulate activities conducted in proximity to high voltage lines. Subsection .670(2) provides in part that no person or his agent or employee may "store, operate, erect, maintain, move or transport ... buildings or other structures within 10 feet of a high voltage overhead electrical line or conductor." Section .680 requires a person who will work in closer proximity to a high voltage line or conductor than is permitted by AS 18.60.670 to notify the owner or operator of the line or conductor and to arrange for the installation of temporary barriers, "temporary deenergization and grounding of the conductors, or a temporary raising of the conductors." It is undisputed that the Atwaters violated these provisions by moving and maintaining the Co-Pilot Motel within ten feet of the high voltage lines and by failing to arrange for appropriate safeguards before allowing work to be done on the motel roof near the high voltage lines.

"Penalties" for violation of the high voltage statutes are set forth in AS 18.60.685. Subsection .685(b) provides:

If a violation of AS 18.60.670—18.60.-695 results in physical or electrical contact with an overhead high voltage line or conductor, the violator is liable to the owner or operator of the high voltage line or conductor for all damage to the facilities and for all liability incurred by the owner or operator as a result of the unlawful activities.

We must first determine whether the indemnity provision of subsection .685(b) applies in this case and, if so, whether MEA is entitled to full indemnification for all liability it might incur as a result of the wrongful death action, including indemnification for its own negligence.

The Atwaters urge a construction of AS 18.60.685 whereby it would be applicable only if the violator had actual knowledge that the lines were high voltage lines. The language of the statute, however, does not excuse the violator simply because he was unaware of the line's actual voltage. Such a loophole in the statutory scheme would clash with the legislative purpose of promoting the safety of those required to work near potentially deadly high voltage lines. A would-be violator who has gambled with human lives by creating a perilous situation near a high voltage line should not be sheltered simply because of his own inexcusable ignorance. We decline to construe this safety statute in a manner which is inconsistent with the express objective of that very legislation. *Anchorage Municipal Employees Ass'n v. Municipality of Anchorage*, 618 P.2d 575, 580 (Alaska 1980). We therefore conclude that the high voltage statute applies notwithstanding the violator's uncertainty as to the amount of voltage involved.

We also reject the Atwaters' contention that MEA's violation of the National Electrical Safety Code by its failure to inspect for, and remedy, code deficiencies, bars MEA from seeking indemnification under AS 18.60.685. The language of the

---

1. MEA does not appeal this grant of partial summary judgment.

2. The estate and the partnership present similar arguments on appeal. For convenience, we refer at times to both the estate and the partnership collectively as the Atwaters.

statute does not make indemnification dependent on the utility's compliance with the code. The utility's failure to comply with the code may constitute negligence, however.

MEA does not appeal the trial court's conclusion that it was "negligent in its failure to properly locate and/or maintain its high voltage lines." Having held that the indemnity provision of the high voltage statute applies in this case, we must now determine whether it provides for full indemnity, including indemnity for liability resulting from MEA's own negligent conduct.

Subsection .685(b) provides that where a violation of AS 18.60.670—.695 results in physical or electrical contact with an overhead high voltage line, "the violator is liable to the owner or operator of the high voltage line ... for all liability incurred by the owner or operator *as a result of the unlawful activities.*" [3] (Emphasis added.) The meaning of the emphasized language is unclear. It might be intended to require indemnification for that portion of the liability which was caused by the unlawful activities, but not for that which was due to the fault of the utility—a "comparative causation" approach.[4] Alternatively, it might be intended to require indemnification for the entire liability where the viola-

tion was a proximate cause of the accident, even though the utility's negligence was also a proximate cause.

We believe the comparative causation approach comports more closely with the common meaning of the statutory language and with the policy of promoting public safety which underlies the statute. We first note that the legislature did not simply require indemnification "for all liability incurred." Neither did it require indemnification "for all liability incurred as a result of the contact with the high voltage lines." [5] The "as a result of the unlawful activities" language qualifies "all liability incurred"; it suggests, although it does not command, that liability should be apportioned to the violator in proportion to the extent to which his violation caused the accident.

More importantly, we believe that a comparative causation approach is more consistent with the policy of promoting public safety which underlies the high voltage statutes. This policy would not be served by interpreting the statute as requiring indemnification for the utility's own negligence. As the facts of this case graphically illustrate, if the utility shirks

---

**3.** The statute provides an exception to AS 09.16.-010—.060, the Alaska Uniform Contribution Among Tortfeasors Act, which provides for pro rata contribution among joint tortfeasors. Alaska Statute 09.16.010(f) provides that the Contribution Act does not impair any right of indemnity under existing law.

**4.** Apportionment of liability on the basis of causation is also seen in the application of comparative negligence principles in strict liability cases where the parties' relative "contribution to the injury" is apportioned. *Butaud v. Suburban Marine & Sporting Goods, Inc.,* 555 P.2d 42, 46 (Alaska 1976). In negligence cases, however, fault, rather than physical causation, is allocated. *State v. Kaatz,* 572 P.2d 775, 782 (Alaska 1977). *See generally* H. Woods, Comparative Fault § 5:5 (1978 & Supp.1985) (discussing role of causation in making comparison).

**5.** In *Moore v. Southwestern Electric Power Co.,* 737 F.2d 496 (5th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985),

the court held the following Texas statute to require full indemnification, including indemnification for liability incurred as a result of the utility's own negligence:

> If a violation of this Act results in physical or electrical contact with any voltage overhead line, the ... firm, corporation, or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line for all damages to such facilities and for *all liability incurred by such owner or operator as a result of any such contact.*

737 F.2d at 499–500 (emphasis added). MEA argues that the Texas statutory provision is "directly comparable" to Alaska's and that we should follow *Moore.* The Texas statute is readily distinguishable, however, since it provides for indemnification "for all liability incurred ... as a result of [the] contact." It unambiguously requires full indemnification regardless of the extent to which the utility's wrongdoing was a cause of the harm. Because of the different language of the Alaska statute, we decline to follow *Moore.*

its duty of due care there may be tragic consequences. Placing a strong incentive on the utility, as well as on would-be violators, to exercise due care will maximize public safety. This incentive is best provided by an interpretation of the statute which requires indemnification of the utility only for that portion of the total liability caused by the violator's unlawful activities and not for that portion caused by the utility's negligence.[6]

REVERSED.

**6.** The Atwaters also argue that MEA's negligence was the superseding cause of the accident. We disagree. A finding of superseding cause means that one's duty to prevent harm to those threatened by his negligent conduct is shifted to another. *Dura Corp. v. Harned,* 703 P.2d 396, 402–03 (Alaska 1985). It occurs when "after the event and looking back from the harm to the actor's negligent conduct it appears to the court *highly extraordinary* that it should have brought about the harm." *Yukon Equipment, Inc. v. Gordon,* 660 P.2d 428, 433 n. 4 (Alaska 1983) quoting Restatement (Second) of Torts § 435 (1965) (emphasis added). We do not find it highly extraordinary that the Atwaters' placement of the motel under high voltage lines brought about the accident; to the contrary the harm was quite foreseeable.

The Atwaters' claim that MEA's knowledge of the dangerous condition and its failure to remedy it for almost three years prior to the accident was a superseding cause. They cite the Restatement (Second) of Torts § 452(2) which provides: "Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause." The Atwaters' violations of the high voltage statutes were ongoing and did not end on the date the motel was moved. Not only did they fail to notify MEA and arrange for appropriate safeguards prior to directing work to be done in proximity to the high voltage power line, a violation of AS 18.60.680, they maintained a building within ten feet of the line, an ongoing violation of AS 18.60.670(2). There was no lapse of time between their negligent conduct and the accident. More importantly, there is no compelling policy reason for shifting the duty to prevent the accident entirely to MEA. In short, this is not one of those "exceptional cases" which is required to shift the duty, as stated in *Dura Corp.,* 703 P.2d at 403.