**Daniel R. COLE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–3865.

Court of Appeals of Alaska.

March 20, 1992.

---

**176**

Dan E. Dennis, Anchorage, for appellant.

Joseph N. Levesque, Asst. Dist. Atty., Nathan A. Callahan, Dist. Atty., Kenai, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

**1.** Alaska Statute 18.60.670 provides in part:
A person individually or through an agent or employee may not
. . . .

## OPINION

BRYNER, Chief Judge.

Daniel R. Cole damaged an overhead powerline while operating a forklift in the yard at his place of employment, Wilson Supply. While Cole was backing the forklift to pull a section of pipe out of a pile, some part of the forklift came into contact with an overhead high voltage electrical wire operated by the Homer Electric Association (HEA). The wire sparked and burned into two pieces. Cole immediately turned off the forklift and contacted HEA. When HEA Planning Assistant Mark Ishiguro went to the Wilson Supply yard, Cole told Ishiguro he thought the wire had been too close to the ground.

Cole was charged with the misdemeanor offense of operating machinery or equipment within ten feet of a high voltage overhead electrical line or conductor.[1] He was convicted by a jury and now appeals. We reverse.

Cole first argues that the trial court erred in rejecting this proposed jury instruction:

It is an affirmative defense to this charge that the electrical line or conductor was closer to the ground at the time and place of contact with the line than was required by the National Electrical Safety Code. Therefore, if you decide that it is more likely than not that the electrical line or conductor was closer to the ground than it should have been as required by the National Electrical Safety Code, then you shall find the defendant not guilty.

This affirmative defense is not set forth in any Alaska statute and has heretofore not been recognized by the appellate courts of this state.

Cole asserts that the recognition of his proposed defense is the logical outcome of the Alaska Supreme Court's decision in *Atwater v. Matanuska Electric Association, Inc.*, 727 P.2d 774 (Alaska 1986). That case

---

(2) store, operate, erect, maintain, move, or transport tools, machinery, equipment, supplies, materials, apparatus, buildings, or other structures within 10 feet of a high voltage overhead electrical line or conductor.

began as a wrongful death action brought against the Matanuska Electric Association (MEA) by the representatives of Jack Atwater, who had been fatally electrocuted when he came into contact with a high voltage overhead line while working on the roof of a motel owned by his family. The trial court granted partial summary judgment in favor of Atwater's estate on the issue of MEA's negligence in failing to properly install and/or maintain its high voltage line. MEA also filed a third-party complaint against the Atwater partnership for full indemnification, however, because the Atwaters had violated AS 18.60.670(2) by moving their motel to within 10 feet of the overhead line. MEA claimed the right to full indemnification pursuant to AS 18.-60.685(b), which provides:

> If a violation of AS 18.60.670–18.60.695 results in physical or electrical contact with an overhead high voltage line or conductor, the violator is liable to the owner or operator of the high voltage line or conductor for all damage to the facilities and for all liability incurred by the owner or operator as a result of the unlawful activities.

The trial court granted summary judgment in favor of MEA on their third-party complaint. The supreme court reversed this decision, holding that AS 18.60.685(b) provided for indemnification only for damages caused by the indemnitor's unlawful activities and not for those caused by the utility's own negligence. The court in *Atwater* adopted a comparative causation approach, believing that this comported most closely with the common meaning of the statutory language and with the policy of promoting public safety.

Cole argues that it is absurd for a person who damages a negligently placed high voltage line to have a defense to a civil claim for damages based on the utility's negligence, but not have a corresponding defense to criminal charges. We disagree. The court in *Atwater* applied comparative negligence principles in a civil case between two private parties. Civil cases are

the proper locus for the application of such principles. However, comparative negligence is not a defense to a criminal charge. *Cf. Wren v. State*, 577 P.2d 235, 238–39 (Alaska 1978).

Even if we were to recognize the affirmative defense Cole advocates, a reversal of Cole's conviction would not result. Cole was not charged with hitting the power line, he was charged with operating the forklift within 10 feet of the line. Mark Ishiguro testified that according to the National Electric Safety Code (NESC), which is the standard for electrical safety in the State of Alaska, the wire Cole hit should have been at least 21 feet off the ground. Defense expert witness Nelson Brison testified that according to his reading of the NESC, the minimum allowable height of the wire Cole hit would have been 21.95 feet off the ground. Cole estimated that the line he hit was 15 to 18 feet high. Even accepting Cole's testimony that the forklift was only raised to between 15 and 18 feet when he hit the line, he would have been well within the 10–foot zone around the line if the line had been placed at the NESC designated height of between 21 and 22 feet. No reasonable juror could have found that the forklift was more than 10 feet from where the line should have been according to NESC guidelines. Therefore, Cole's proposed affirmative defense would not have entitled him to an acquittal.

Cole's next assertion, that the trial court erred in denying his motion for judgment of acquittal, is basically a restatement of his affirmative defense argument. He contends that because the powerline he hit was below the NESC height requirement, no reasonable juror could have found that he acted with criminal negligence in coming into contact with the line. He argues that his failure to perceive the risk that the line would not be up to NESC standards was not a gross deviation from the standard of care that a reasonable person would have observed in the situation. For the reasons stated above, we reject Cole's claim that he was entitled to a judgment of acquittal.[2]

**2.** We also note that the risk Cole failed to perceive in committing this offense was not the

risk that the line was below NESC standards,

■ Cole finally challenges the *mens rea* instruction given by the trial court. With regard to the *mens rea* element, Cole proposed an instruction which would have required the jury to find that he acted recklessly. The trial court rejected this instruction, instead, telling the jury that it was required to find that Cole acted with criminal negligence.

Nowhere in Title 18 is the *mens rea* for a violation of AS 18.60.670 specified. Cole urges this court to apply the statutory *mens rea* provision for Title 11 criminal offenses, which is set forth in AS 11.81.-610(b):

> Except as provided in AS 11.81.600(b), if a provision of law defining an offense does not describe a culpable mental state, the culpable mental state that must be proved with respect to
>
> (1) conduct is "knowingly"; and
>
> (2) a circumstance or a result is "recklessly."

Alaska Statute 11.81.640 restricts the application of AS 11.81.610(b) to Title 11 offenses. Cole argues, however, that in the absence of any other statutory guidance, this court should apply the recklessness *mens rea* prescribed in AS 11.81.610(b) to his offense.

The state cites several cases in which we have approved the application of the negligence *mens rea* to non-Title 11 offenses. All of these cases, however, are readily distinguishable from this one.

We have consistently read a civil negligence requirement into regulations establishing misdemeanor commercial fishing violations for which no *mens rea* was specified. *See Beran v. State,* 705 P.2d 1280 (Alaska App.1985); *Reynolds v. State,* 655 P.2d 1313 (Alaska App.1982). In 1988, the Alaska Legislature indicated its approval of these cases by enacting AS 16.05.723, providing that negligence is the requisite *mens rea* for a misdemeanor commercial fishing offense conviction. Commercial fishing is a heavily regulated commercial industry. In other jurisdictions, misdemeanor commercial fishing offenses such

as those to which we have applied a negligence requirement might be prosecuted on a strict liability basis. *See, e.g., State v. Borges,* 10 Ohio App.3d 158, 460 N.E.2d 1147 (1983). In applying even the minimal *mens rea* requirement of civil negligence in this context, we relied on the well-established preference in Alaska law for *mens rea* requirements for criminal offenses. *See, e.g., State v. Rice,* 626 P.2d 104, 108 (Alaska 1981); *Speidel v. State,* 460 P.2d 77, 78–80 (Alaska 1969); *Reynolds v. State,* 655 P.2d at 1315.

We have also accepted negligence rather than recklessness as a required element for proving driving offenses. In *Gregory v. State,* 717 P.2d 428 (Alaska App.1986), we held that criminal negligence, not civil negligence, was the *mens rea* for the offense of driving while license suspended (DWLS). Like commercial fishing, driving is a licensed and heavily regulated activity. However, because driving "approaches being a necessity for most people" in our society, and is not necessarily a commercial activity, we held in *Gregory* that the more stringently-drawn element of criminal negligence rather than civil negligence is the appropriate *mens rea* for DWLS. *Id.* at 431.

The general rule, reflected in AS 11.81.-610(b), is that recklessness is the applicable culpable mental state when a surrounding circumstance is an element of an offense and no other culpable mental state has been specified. Alaska Statute 11.81.610(b) does not directly apply to non-Title 11 offenses. However, neither do this court's commercial fishing and DWLS decisions stand for the proposition that negligence should be the prevailing standard for non-Title 11 offenses. If anything, our willingness to adopt negligence as the culpable mental state for commercial fishing and DWLS offenses indicates that this standard should be applied only for offenses dealing with heavily regulated activities for which permits or licenses are required.

■ Unlike the DWLS statute and various statutes and regulations establishing commercial fishing offenses, the statute involved in the present case, AS 18.60.670, is

---

but rather the risk that he would be operating his forklift within 10 feet of the line.

not part of a comprehensive scheme of regulations dealing with participants in a licensed and heavily regulated activity. Rather, the statute in this case establishes a broad-based criminal offense: its prohibitions apply to all members of the public alike and encompass almost any conduct that results in the placement of virtually any object within 10 feet of an overhead electrical line. For standard criminal offenses such as this, we conclude that reckless, rather than negligent, disregard of surrounding circumstances should be the applicable culpable mental state unless another culpable mental state is specified or unless a sound reason to apply some other culpable mental state is demonstrated.

The trial court thus erred in instructing Cole's jury to convict if it found Cole acted with criminal negligence. The error requires reversal of Cole's conviction.

The judgment of conviction is REVERSED.

MANNHEIMER, J., not participating.