NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ROBERT LEE GREEN III,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12856
Trial Court No. 3AN-14-06428 CR

O P I N I O N

No. 2765 — November 17, 2023

Appeal from the Superior Court, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Ariel J. Toft, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for the Appellant. Michal Stryszak, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Clyde "Ed" Sniffen Jr., Acting Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

Following a jury trial, Robert Lee Green III was convicted of two counts of felony furnishing alcohol to a person under the age of twenty-one, after the underage person drove while under the influence of the alcohol, resulting in a fatal accident that

killed him and seriously injured two of his passengers.[1]  The superior court sentenced Green to a composite sentence of 2 years with 1 year suspended.

Green now appeals, raising several claims.

Green's primary claim is that the superior court misinstructed the jury on the mental state elements of the crime of felony furnishing alcohol to a person under age twenty-one.  Typically, the crime of furnishing alcohol to a minor is a misdemeanor offense.  But the crime is elevated to a felony under certain circumstances, including (as charged here) when the minor who receives the alcohol negligently causes serious physical injury or death to another person while under the influence of that alcohol.

On appeal, Green contends that the superior court misinstructed the jury in two respects.

First, Green argues that the court failed to instruct the jury that Green had to be "criminally negligent" with respect to the possibility that the minor who received the alcohol would negligently cause serious physical injury or death to another person.  The State concedes that the superior court erred in omitting this requirement from the elements instruction.  We agree with the parties, and we further conclude that this omission requires reversal of Green's convictions under *Jordan v. State*.[2]

Second, Green argues that the court erred in instructing the jury that the State needed to prove only that Green was "criminally negligent" with respect to the age of the recipient of the alcohol.  He argues that the State was required to prove that he acted "recklessly" with respect to the circumstance of age.  The State disagrees with Green on this point and contends that the superior court was correct to instruct the jurors that they needed to find only that Green was "criminally negligent" as to the age of the

---

[1]   AS 04.16.051(d)(2).

[2]   *Jordan v. State*, 420 P.3d 1143 (Alaska 2018).

alcohol recipient. We have closely examined the plain language and legislative history of the statute, and after application of standard tools of statutory construction, we have determined that the State is correct that criminal negligence, rather than recklessness, is the mental state applicable to the defendant's awareness of the age of the alcohol recipient.

Green also argues that the superior court erred in declining to dismiss his indictment. Green raises two challenges to his indictment — first, that there was insufficient evidence to support the indictment, and second, that the statute under which he was charged is unconstitutional. For the reasons explained in this opinion, we reject these claims.

Finally, Green challenges the superior court's rejection of (1) his request to refer his case to the three-judge sentencing panel[3] and (2) a sentencing agreement between Green and one of the injured passengers calling for a wholly-suspended sentence.[4] Because we are reversing Green's convictions, we need not address Green's sentencing claims.

*Background facts and proceedings*

On February 19, 2014, at around 11:00 p.m., seventeen-year-old B.M. picked up his friend, eighteen-year-old Dallas Brown, from work.[5] B.M. was driving, and two other friends were in the vehicle. (These friends were also teenagers.)

---

[3]   AS 12.55.165.

[4]   AS 12.55.011(a) (providing that, with some exceptions, the court "may permit the victim and the offender to submit a sentence for the court's review based upon a negotiated agreement between the victim and the offender").

[5]   We have used initials to refer to minors under the age of eighteen at the time of the incident in this case.

The friends planned to drink alcohol and hang out together that night. Brown texted his co-worker, twenty-nine-year-old Robert Lee Green III, and asked if he would buy alcohol for him. Green agreed.

B.M. drove with his friends to Green's house. While Green was talking with Brown through the open car window, the other occupants of the car discussed what alcohol they wanted. Brown ultimately relayed to Green the group's request — two bottles of R&R whiskey and a Four Loko — and Brown handed Green the money he had collected from the group. (Green had not previously met the other occupants of the vehicle.)

Green drove to the liquor store, with the others following behind him. After Green purchased the requested alcohol, they all returned to Green's house. Once there, Green got out of his vehicle and handed Brown the liquor through the open window of B.M.'s car. The group of teenagers then left to pick up another friend.

The friends went to B.M.'s house to drink. Their plan was to stay at B.M.'s house for a while, as they did not have a designated driver that night. Everyone drank in a downstairs area of the house, with B.M. and another friend, eighteen-year-old Damien Doctolero, drinking heavily.

At some point, Doctolero started getting loud, and B.M.'s older brother came downstairs, worried that their mother would wake up. B.M. said that he was going to leave and take Doctolero home, and the group decided to call it a night at around 2:00 or 3:00 a.m. B.M., Doctolero, and a third friend, sixteen-year-old C.T., got in B.M.'s car — with B.M. driving. The other two friends stayed behind.

While driving down O'Malley Road in Anchorage in dark and snowy conditions, B.M. lost control of the vehicle and flipped it into a culvert. Officer Steve Dunn, a traffic fatality investigator for the Anchorage Police Department, testified that the vehicle was traveling at around eighty miles per hour prior to the crash. Dunn

2765

believed that the car hit a snow embankment, before rolling or vaulting into the air. Following the crash, B.M. and Doctolero were found lying in the road, apparently ejected from the vehicle. The teenagers were not wearing seat belts.

B.M. died from head wounds at the scene of the accident. Doctolero and C.T. were transported to the hospital with serious injuries. C.T. had a right temporal skull fracture and spent several days in the hospital; she suffered headaches for several months afterward. Doctolero, who also suffered a skull fracture, was initially placed in a medically induced coma because of possible brain bleeding.

Forensic Scientist Colleen O'Bryant testified that B.M.'s blood alcohol content was .251 percent, three times the legal driving limit. According to the medical records introduced into evidence, C.T.'s blood alcohol content was .131 percent and Doctolero's was .249 percent.

A grand jury indicted Green on two counts of felony furnishing alcohol to a person under age twenty-one under the theory that Green furnished alcohol to B.M., who then caused serious physical injury to Doctolero and C.T.[6] Green's case proceeded to trial, and a jury convicted Green as charged.

---

[6] AS 04.16.051(d)(2). Green was also charged with — and later convicted of — driving with a suspended license. He does not challenge this conviction on appeal.

*The elements of the offense of furnishing alcohol to a person under age twenty-one and litigation of the jury instruction defining this offense*

Furnishing alcohol to a minor under AS 04.16.051 is generally a class A misdemeanor.[7] Subsection (a) provides, "A person may not furnish or deliver an alcoholic beverage to a person under the age of 21 years."[8]

This crime is elevated to a class C felony when certain aggravating circumstances are present. As stated in subsection (d):

> (d) A person acting with criminal negligence who violates this section is guilty of a class C felony if
>
>> (1) within the five years preceding the violation, the person has been previously convicted under
>>
>>> (A) this section; or
>>>
>>> (B) a law or ordinance of this or another jurisdiction with elements substantially similar to this section;
>>
>> (2) the person who receives the alcoholic beverage negligently causes serious physical injury to or the death of another person while under the influence of the alcoholic beverage received in violation of this section; . . . or
>>
>> (3) the violation occurs within the boundaries of a municipality or the perimeter of an established village that has adopted a local option under AS 04.11.491

---

[7] AS 04.16.180(a). This provision — establishing the classification level for many violations of Title 4 — was recently repealed by the legislature, effective January 1, 2024. SLA 2022, ch. 8, §§ 164, 177.

[8] AS 04.16.051(a).

and has not opted out of applying a class C felony to violations of this section under AS 04.11.491(g).[9]

Green was charged and convicted under paragraph (d)(2) — based on the theory that he furnished alcohol to B.M., a person under twenty-one years old, and B.M. negligently caused serious physical injury to Doctolero and C.T. while under the influence of the alcohol he received from Green.

(We pause to note that, in 2022, the legislature amended this statute, effective January 1, 2024.[10] Throughout this opinion, when we discuss the statute under which Green was convicted, we are referring to the pre-2024 statute in effect at the time of the events in this case.)

The crime for which Green was charged and convicted contains three primary elements — conduct, circumstance, and result:

- *Conduct*: furnishing or delivering alcohol to a person

- *Circumstance*: the recipient of the alcohol was under twenty-one years old

- *Result*: the recipient of the alcohol negligently caused serious physical injury to or the death of another person while under the influence of the alcohol

---

[9]  AS 04.16.051(d).

[10]  SLA 2022, ch. 8, §§ 103-04.  Under the new law, the "criminal negligence" standard applies to both the misdemeanor and felony offense of furnishing alcohol to a minor.  The amended subsection (d) provides, "A person who, with criminal negligence, furnishes or delivers an alcoholic beverage to a person under 21 years of age in violation of (a) of this section commits the crime of furnishing or delivering to a minor."  And a new subsection (e) classifies the offense as a misdemeanor or a felony depending on whether any one of the three aggravating circumstances exist.  We express no view on these changes.

In the superior court, the parties initially disputed the mental state that applied to each element.[11]  After considerable discussion, the court gave the following instruction to the jury regarding the elements of the offense:

> To prove that the defendant committed [the crime of furnishing or delivery of alcoholic beverages to persons under the age of 21], the state must prove beyond a reasonable doubt the following elements:
>
> (1) the defendant knowingly furnished or delivered an alcoholic beverage to another person;
>
> (2) the defendant was criminally negligent as to whether the person who received the alcoholic beverage was under 21 years of age at the time of the incident; and
>
> (3) the person who received the alcoholic beverage caused through civil negligence serious physical injury to or the death of another person . . . while under the influence of the alcoholic beverage received from the defendant.

*Why we conclude that the court's failure to instruct the jury on the mental state of criminal negligence as to the result element requires reversal of Green's convictions*

In the superior court, Green argued that the mental state of criminal negligence applied to the result element (element #3).  On appeal, he renews this argument, challenging the superior court's failure to include this mental state requirement.  The State concedes error on this point.

The parties' position is based on the inclusion of "criminal negligence" as the applicable mental state in the subsection elevating the base-level misdemeanor

---

[11]  The State ultimately agreed with Green that the mental state of "knowingly" applied to the conduct element of furnishing or delivering an alcoholic beverage to a person.

offense to a felony (subsection (d)). Both parties agree that the statute should be read to apply this mental state to the result element in paragraph (d)(2).

We have reviewed the legislative history, and we accept the State's concession on this point.[12] We note that many legislators were concerned with the potential scope of liability under this provision,[13] and they repeatedly discussed the need for the adult furnishing the alcohol to act with "criminal negligence" and the recipient of the alcohol to act with "civil negligence."[14]

---

[12] *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (appellate courts must independently assess whether a State's concession of error in a criminal case is well-founded).

[13] For example, one legislator noted the possibility that a person, at their own house, might provide alcohol to minors who promised not to drive, and expressed concern about the reach of the statute to that circumstance, should the minors leave the house against the provider's expectations. *See* Audio of House Finance Committee, House Bill 330, statement of Representative John Davies, Tape HFC-02, #33, at 18:16 – 18:52 (Feb. 28, 2002). Another legislator was concerned about creating felony exposure for an older sibling who was just over the age of majority and provided alcohol to a slightly younger teenaged sibling. *See* Audio of House Judiciary Committee, House Bill 330, statement of Representative Kevin Meyer, Tape HJC-02, #15, at 1:03:57 – 1:05:43 (Feb. 11, 2002).

We note that the statute that prohibits furnishing alcohol to a minor contains an exception for furnishing an alcoholic beverage "by a parent to the parent's child, by a guardian to the guardian's ward, or by a person to the legal spouse of that person if the furnishing or delivery occurs off licensed premises." AS 04.16.051(b)(1).

[14] *See, e.g.*, Audio of House Finance Committee, House Bill 330, statement of Representative Norman Rokeberg, Tape HFC-02, #33, at 18:59 – 19:29 (Feb. 28, 2002) (discussing the need for the adult furnishing the alcohol to act with criminal negligence and the recipient of the alcohol to act with civil negligence); Audio of House Finance Committee, House Bill 330, statement of Representative John Davies, Tape HFC-02, #33, at 21:27 – 21:34 (Feb. 28, 2002) (clarifying that the alcohol "has to be provided with criminal negligence" and "the [recipient] has to negligently cause physical, serious physical injury"); Audio of House Finance Committee, House Bill 330, statement of Assistant Attorney

(continued...)

The parties disagree, however, about whether this error requires reversal of Green's convictions. In *Jordan v. State*, the Alaska Supreme Court held that "the failure to instruct the jury on a contested element of an offense is structural error" requiring automatic reversal, without resort to harmless error review.[15] Because the mental state applicable to paragraph (d)(2) was a contested element of the offense, the omission of that mental state from the jury instruction would appear to require automatic reversal under the supreme court's decision in *Jordan*.[16]

But the State asserts that reversal is not required because the other jury instructions adequately conveyed the requirement that Green acted with criminal negligence with respect to the result.[17] Specifically, the State points to the jury

---

[14]   (...continued)
General Anne Carpeneti, Tape HFC-02, #33, at 32:59 – 33:22 (Feb. 28, 2002) (stating that the statute provides that "if you have given the alcohol to the child with criminal negligence, and the person who receives it — the minor who receives it and drinks it — goes out, and the minor acting with civil negligence, causes serious physical injury or death to another person, the provider can be found guilty of a class C felony").

[15]   *Jordan v. State*, 420 P.3d 1143, 1148 (Alaska 2018).

[16]   We note that, while Green argued in his initial briefing that the superior court erred in omitting the mental state element applicable to the result, he did not cite *Jordan* or argue that the error was structural and only did so for the first time at oral argument. Because we are bound by the analysis in *Jordan* in assessing the omission of an essential element, we invited the State to file supplemental briefing on the issue and gave Green an opportunity to respond to the State's brief. *See Sweezey v. State*, 167 P.3d 79, 80 (Alaska App. 2007) ("[A]s an intermediate appellate court, we are bound to follow the decisions of the Alaska Supreme Court.").

[17]   *See Geisinger v. State*, 498 P.3d 92, 109-10 (Alaska App. 2021) (concluding that a flaw in the jury instructions was not structural error under *Jordan* when the instructions otherwise set out the missing element and the prosecutor correctly characterized the law in closing argument); *Brown v. State*, 435 P.3d 989, 991-92 (Alaska App. 2018) (concluding that the omission of an element in the jury instructions did not require reversal under *Jordan*
(continued...)

instructions on causation — instructions that made it clear that the jury could not convict Green unless the results of his conduct were "reasonably foreseeable in light of ordinary experience" — and argues that these instructions sufficiently conveyed the requirement that Green act with criminal negligence with respect to the risk that one of the recipients of the alcohol would negligently cause serious physical injury or death.

But the criminal negligence standard requires a risk that is "of such a nature and degree that the failure to perceive it constitutes a *gross* deviation from the standard of care that a reasonable person would observe in the situation."[18] As the Alaska Supreme Court has explained, "[T]he criminal negligence standard requires the jury to find negligence so gross as to merit not just damages but also punishment."[19] It is not enough that the result be "reasonably foreseeable." Yet nothing in the causation jury instructions provided in Green's case captured the heightened proof required under the criminal negligence standard, or tied that heightened standard to the result element set out in the elements instruction.

We therefore conclude that the failure to instruct the jury that Green had to be criminally negligent with respect to the possibility that the recipient of the alcohol

---

[17] (...continued)
when the element was uncontested and the instructions otherwise communicated the requirement).

[18] *State v. Hazelwood*, 946 P.2d 875, 877 (Alaska 1997) (quoting *Hazelwood v. State*, 912 P.2d 1266, 1278 n.16 (Alaska App. 1996)); *see also* AS 04.21.080(a)(1) ("[A] person acts with 'criminal negligence' with respect to a result or to a circumstance described by a provision of law defining an offense when the person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation[.]").

[19] *Hazelwood*, 946 P.2d at 878.

would negligently cause serious physical injury or death to another person while under the influence of the alcohol requires reversal of Green's convictions.

Although this analysis is sufficient to determine that Green's convictions must be reversed, the parties also dispute the mental state applicable to the circumstance of age. Because this issue may arise again if Green is retried, we must explain why we conclude that the jury was properly instructed on this element.

### *Why we conclude that criminal negligence, not recklessness, applies to the circumstance of age*

As we have explained, the parties disagree as to the mental state applicable to the circumstance element of the recipient's age (element #2). The State argues that the applicable mental state is "criminal negligence," while Green argues that the applicable mental state is "recklessly." More specifically, the State argues that the mental state of "criminal negligence" in subsection (d) relates back to the element of age set out in subsection (a). Green contends that criminal negligence does not relate back, and that the applicable mental state is therefore "recklessly" — the default mental state for circumstance elements for which no specific mental state is provided by statute.[20]

Resolving this question requires us to interpret the statute, AS 04.16.051. When we engage in statutory interpretation, we examine the plain language of the statute, the legislative history, and the legislative purpose of the statute.[21] Alaska has "rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach"

---

[20]  *See Cole v. State*, 828 P.2d 175, 178-79 (Alaska App. 1992) (holding that "recklessly" should be the default mental state for a circumstance element, even for offenses outside of Title 11, when the offense does not otherwise involve a highly regulated industry and there is no demonstrated intent to employ a different mental state).

[21]  *Alaska Trustee, LLC v. Bachmeier*, 332 P.3d 1, 7 (Alaska 2014).

to statutory interpretation.[22]  Under this approach, "[T]he plainer the language of the statute, the more convincing any contrary legislative history must be."[23]

Beginning with the plain language, we agree with the State that it tends to support the view that the mental state of "criminal negligence" applies to the circumstance of age when a defendant is charged with a felony under the statute.

As we have explained, the underlying elements of the crime are set out in subsection (a), which provides:  "A person may not furnish or deliver an alcoholic beverage to a person under the age of 21 years."[24]  A violation of subsection (a) becomes a felony under subsection (d) if any of the enumerated aggravating factors is established. Here again is the portion of subsection (d) under which Green was convicted, with the critical portions italicized:

> (d) A person *acting with criminal negligence* who violates this *section* is guilty of a class C felony if
>
> . . . .
>
> (2) the person who receives the alcoholic beverage negligently causes serious physical injury to or the death of another person while under the influence of the alcoholic beverage received in violation of this *section*[.][25]

As a matter of plain language, the word "section" refers to the entirety of AS 04.16.051, including subsection (a) and the aggravating factors listed in subsection (d), because under Alaska's statutory scheme, "section" refers to the portion

---

[22]  *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991).

[23]  *Id.*

[24]  AS 04.16.051(a).

[25]  AS 04.16.051(d)(2) (emphasis added).

of statutory law identified by the last three digits of the statute's number — *i.e.*, AS 04.16.*051*.[26]  Accordingly, when the statute refers to "a person acting with criminal negligence who violates this section," it is presumably referring to a person who violates the entire statute with criminal negligence:  both subsection (a) and one of the aggravating factors listed in subsection (d).

We note that this does not necessarily mean that criminal negligence applies to *every* element and *every* aggravating factor, because statutory interpretation in Alaska is not dictated solely by the plain language.  Rather, under Alaska's sliding scale approach, the plain language of the statute may be rebutted by indication of a contrary legislative intent in the legislative history and the statute's underlying purpose.  Thus, for example, the parties agree that "knowingly," not criminal negligence, is the mental state for the conduct element of furnishing or delivering alcohol because "knowingly" is the only mental state applicable to conduct under Alaska's statutory scheme.[27]

Because the plain language suggests that criminal negligence relates back to the circumstance of age set out in subsection (a), Green must demonstrate some contrary indication of legislative intent to show otherwise.  But we have reviewed that history at length and, although it is often confused and ambiguous, it also tends to support the State's position.

---

[26]  *See* AS 01.05.011 (distinguishing between titles, chapters, and sections).

[27]  *See* AS 04.21.080(a) (defining the mental states used in Title 4 — "criminal negligence," "knowingly," and "recklessly" — of which only "knowingly" applies to conduct); *see also Smith v. State*, 28 P.3d 323, 325 (Alaska App. 2001) ("When an offense requires proof that a defendant engaged in a particular kind of conduct, the State invariably will have to prove that the defendant acted 'knowingly' with respect to that conduct because 'knowingly' is the only culpable mental state that applies to conduct.").

Alaska Statute 04.16.051(a) was first enacted in 1980 as part of a comprehensive rewrite of Title 4.[28] In its final codification, the language of AS 04.16.051(a) provided: "A person may not furnish an alcoholic beverage to a person under the age of 19 years."[29] This original provision did not contain an explicit *mens rea*, and at the time, the statute as a whole did not contain any of the felony-level aggravating circumstances that the legislature later added.[30]

The first felony provision — the recidivist provision — was enacted in 1994. As originally drafted, the 1994 bill would have elevated to a felony *all* instances of furnishing alcohol to a minor. In particular, the initial version of the bill would have added a penalty provision that read, "A person acting with criminal negligence who violates this section is guilty of a class C felony."[31] As the bill sponsor explained, the purpose of this legislation was to increase the penalty for the offense of furnishing alcohol to a minor to a class C felony.[32]

---

[28] SLA 1980, ch. 131, § 3.

[29] *Id.*

[30] For a brief period of time while the bill was pending in committee, the draft provision included a mental state of "knowingly," such that the language read: "A person may not *knowingly* furnish an alcoholic beverage to a person under the age of 19 years." H.C.S. C.S.S.S.S.B. 239, 11th Leg., 2d Sess. (Version E) (as introduced by S. Jud., May 28, 1980) (emphasis added); H.C.S. C.S.S.S.S.B. 239, 11th Leg., 2d Sess. (Version F) (as offered by S. Fin., June 1, 1980) (emphasis added).

[31] H.B. 28, 18th Leg., 1st Sess. (Version A) (as introduced, Jan. 11, 1993).

[32] Sponsor Statement for H.B. 28 by Rep. William K. Williams, H. Jud. Comm., House Bill 28 (Mar. 5, 1993).

This categorical escalation in the penalty met resistance in the House Judiciary Committee, including opposition by the Department of Law,[33] and the bill was subsequently amended to limit felony exposure to those, "acting with criminal negligence," who had a prior conviction for the same or substantially similar offense.[34] As enacted, the provision stated:

> (d) A person acting with criminal negligence who violates this section is guilty of a class C felony if, within the five years preceding the violation, the person has been previously convicted under
>
> > (1) this section; or
> >
> > (2) a law or ordinance of this or another jurisdiction with elements substantially similar to this section.[35]

This chronology of events — and in particular, the original version of the bill, which did not contain a recidivist provision — suggests that "criminal negligence" was intended to refer, in some form, to the base-level crime of furnishing alcohol. This is particularly true in light of the fact that no *mens rea* is typically required with respect

---

[33] *See* Audio of House Judiciary Committee, House Bill 28, statement of Assistant Attorney General Margot Knuth, Tape 93-40, at 42:00 – 44:34 (Mar. 24, 1993) (stating that the proposed elevation of the crime of furnishing alcohol to a minor to a felony was "troublesome").

[34] C.S.H.B. 28, 18th Leg., 1st Sess. (Version B) (as offered by H. Jud., Apr. 15, 1993); Audio of House Judiciary Committee, House Bill 28, Tape 93-60, at 5:25 – 5:34, 15:14-15:35 (Apr. 14, 1993) (adopting the proposed recidivist amendment); Written Testimony of Rep. William K. Williams, H. Fin. Comm., House Bill 28 (Jan. 18, 1994).

[35] SLA 1994, ch. 46, § 1.

to a defendant's prior convictions when the underlying base-level crime is itself a crime.[36]

The felony provision at issue in this case was enacted in 2002.[37]   This provision provides:

> (d) A person acting with criminal negligence who violates this section is guilty of a class C felony if
>
>     . . . .
>
> (2) the person who receives the alcoholic beverage negligently causes serious physical injury to or the death of another person while under the influence of the alcoholic beverage received in violation of this section; in this paragraph,
>
>> (A) "negligently" means acting with civil negligence; and
>>
>> (B) "serious physical injury" has the meaning given in AS 11.81.900[.][38]

Strong support for the State's position can be found in the legislative history to the 2002 provision — in particular, in the House Judiciary Committee hearing, where the bill, House Bill 330, was initially referred.   At that committee hearing, Representative Ethan Berkowitz directly inquired as to whether there was "any *mens rea* . . . about knowing that the person was [under] twenty-one."[39]   Assistant Attorney

---

[36]   *See, e.g.*, *Hoople v. State*, 985 P.2d 1004, 1006 (Alaska App. 1999) (holding that the crime of felony driving under the influence does not require proof of any culpable mental state with respect to the prior convictions that aggravate the base-level offense to a felony).

[37]   SLA 2002, ch. 90, § 4.

[38]   AS 04.16.051(d)(2).

[39]   Audio of House Judiciary Committee, House Bill 330, statement of Representative
(continued...)

General Anne Carpeneti, representing the Department of Law, responded that "the culpable mental state is 'acting with criminal negligence violates this section.' So you'd have to be criminally negligent about that."[40]

Unfortunately, however, subsequent discussions of the applicable *mens rea* requirement significantly muddled the issue — and the discussions that followed in later committee hearings were frequently confusing and unclear. On multiple occasions, the *mens rea* of "knowingly" was not clearly distinguished from the *mens rea* of "criminal negligence," and the two mental states were used interchangeably — with little clarity as to which elements they applied, and defining "criminal negligence" in terms that suggested it required knowledge of the recipient's age. In addition, the legislators often explained that, in order to trigger the felony provision, the *act* of furnishing alcohol had to be done with criminal negligence, while the adult had to "know" that the recipient was a minor — seemingly reversing what the State is now claiming on appeal.

We need not recount that history in full because both parties agree that the legislative history surrounding paragraph (d)(2) does not provide a definitive answer to the mental state issues with respect to the relevant conduct or circumstances in the statute. Green acknowledges that "the legislative history does not shed light on the issue of culpable mental state as it applies to the conduct and circumstance in

---

[39] (...continued)
Ethan Berkowitz, Tape 02-15, at 1:30:41 – 1:31:03 (Feb. 11, 2002).

[40] Audio of House Judiciary Committee, House Bill 330, statement of Assistant Attorney General Anne Carpeneti, Tape 02-15, at 1:31:03 – 1:31:11 (Feb. 11, 2002).

AS 04.16.051(a)."[41] And the superior court similarly recognized the lack of clarity in the legislative history, stating that it was not "overly persuasive."

At oral argument in this case, we brought to the parties' attention a 2008 letter from Attorney General Talis Colberg to Governor Sarah Palin regarding proposed amendments to AS 04.16.051 and a related statute, AS 04.16.052, governing the conduct of servers and bartenders.[42] These amendments sought to remove servers from liability under AS 04.16.051 (the general furnishing statute) and instead capture their conduct within the sister provision, AS 04.16.052 (related to furnishing alcohol by licensees).[43] We subsequently requested supplemental briefing on the import of the letter.

In the letter, Attorney General Colberg expressed the view that the proposed amendments would serve two purposes. First, the proposed amendments would "reduce[] the culpable mental state that must be proved for a conviction from *reckless* as to the age of the person served alcohol to *culpable negligence* regarding the age of the person served" for alcohol licensees and their agents and employees.[44] This

---

[41] After the initial briefing in this case, we requested supplemental briefing on the legislative history of AS 04.16.051. In his supplemental briefing, Green repeatedly asserts that the legislative history "indicates that the appropriate mental state as to the circumstance of age is 'recklessly.'" Upon closer inspection, however, it is clear that Green does not mean that there is anything specific in the legislative history to suggest that the applicable mental state is "recklessly." Rather, Green argues that the legislative history is ambiguous and thus fails to demonstrate a clear intent to dispense with the default mental state of "recklessly" for circumstance elements. That may be true, but as we have already explained, the plain language demonstrates that intent, and Green must therefore point to something in the legislative history or purpose rebutting the statute's plain language.

[42] Letter from Talis J. Colberg, Attorney General, to Sarah Palin, Governor, regarding Senate Bill 265, 2008 WL 4277527 (Apr. 25, 2008).

[43] SLA 2008, ch. 75, §§ 6-7.

[44] Letter from Talis J. Colberg, Attorney General, to Sarah Palin, Governor, regarding
(continued...)

indicates that Attorney General Colberg believed that the mental state applicable to the circumstance of age in the general furnishing statute — at least the base-level furnishing offense — was "recklessly." Second, the amendments would mean that servers, while working on licensed premises, would not be subject to a felony conviction, since AS 04.21.052 does not contain a felony-level counterpart to AS 04.21.051(d).[45]

We take seriously the considered opinion of the Attorney General, but our analysis is ultimately guided by the legislative intent. The letter contains no explanation for the Attorney General's belief that the mental state of "recklessly" applied to the circumstance of age in the general furnishing statute, and it is not clear whether the attorney general was also expressing a view on the felony-level provision, in addition to the base-level offense. Accordingly, we conclude that the Attorney General's letter, standing alone and without explanation, is not entitled to significant weight.[46]

Finally, we note that the rule of lenity does not require us to construe the legislative history in Green's favor. Under the rule of lenity, "when a statute establishing a criminal penalty is reasonably susceptible of more than one meaning, the statute should be construed so as to provide the most lenient penalty."[47] But "this rule of lenity or strict

---

[44] (...continued)
Senate Bill 265, 2008 WL 4277527, at *1 (Apr. 25, 2008) (emphasis added).

[45] *Id.*

[46] *See Basey v. State, Dep't of Pub. Safety, Div. of Alaska State Troopers, Bureau of Investigation*, 408 P.3d 1173, 1178 n.36 (Alaska 2017) (noting that an appellate court exercises independent judgment on matters of statutory interpretation, and "the weight . . . accord[ed] an attorney general's opinion is largely a matter of discretion" (citing *Grimes v. Kinney Shoe Corp.*, 938 P.2d 997, 1000 n.7 (Alaska 1997)) (alterations and internal quotations omitted)).

[47] *Grant v. State*, 379 P.3d 993, 995 (Alaska App. 2016).

construction comes into play only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous."[48]

Employing the normal methods of statutory construction, the plain language supports the conclusion that the legislature intended the mental state of criminal negligence to apply to the circumstance of age, and the legislative history either tends to support the same conclusion or is at most ambiguous. We therefore conclude that the statute requires the State to prove that the defendant was criminally negligent with respect to the age of the alcohol recipient.

*Why we reject Green's arguments regarding his indictment*

Although we are reversing Green's convictions, we must address his contention that the superior court erred in declining to dismiss his underlying indictment in this case.

Green raises two claims.

First, Green argues that the State presented insufficient evidence to sustain his indictment. In the superior court, Green's attorney moved to dismiss the indictment on the grounds that the State presented insufficient evidence to the grand jury that (1) Green knowingly furnished alcohol to B.M., the driver of the vehicle, and (2) Green's conduct was a substantial factor in Doctolero's and C.T.'s injuries, since (according to Green) there was insufficient evidence that Green knew that he was furnishing alcohol to anyone other than his co-worker, Brown. The superior court denied Green's motion, and he renews his arguments on appeal.

Pursuant to Alaska Criminal Rule 6(r), a "grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would

---

[48] *De Nardo v. State*, 819 P.2d 903, 907 (Alaska App. 1991).

warrant a conviction of the defendant."[49]  When reviewing challenges to the sufficiency of the evidence supporting an indictment, "every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment."[50]

Viewing the grand jury evidence in that light, we conclude that a grand juror could reasonably find that Green knowingly furnished alcohol to B.M. and that his conduct was a substantial factor in causing the injuries.  The State presented evidence to the grand jury that the only alcohol the teenagers drank that night was from Green — and that Green bought, and handed over, the alcohol (including two bottles of whiskey) to Brown and his friends, with B.M. driving.  The State also presented evidence that the accident occurred within several hours of that exchange, after the teenagers drank the alcohol.  The Alaska Supreme Court has recognized that drinking and driving is within the scope of reasonably foreseeable risk resulting from minors illegally consuming alcohol.[51]  We therefore uphold the superior court's denial of Green's motion to dismiss the indictment on this basis.

Second, Green moved to dismiss the indictment on the ground that the subsection of AS 04.16.051 under which he was charged violated his substantive due process rights.  In particular, Green contended that the provision under which he was convicted did not require any nexus between the alcohol provided and the negligent act that caused serious physical injury or death, and thus (according to Green) the provision

---

[49]  This provision was numbered as Criminal Rule 6(q) at the time of Green's indictment.

[50]  *State v. Williams*, 855 P.2d 1337, 1346 (Alaska App. 1993).

[51]  *Loeb v. Rasmussen*, 822 P.2d 914, 920 (Alaska 1991) (affirming denial of summary judgment on the ground that "[i]t is well within the scope of foreseeable risk that a minor who purchases alcohol may drive an automobile, and that an alcohol-related accident may result"), *superseded by statute on other grounds as stated in Sowinski v. Walker*, 198 P.3d 1134, 1140 (Alaska 2008).

bore no reasonable relationship to a legitimate governmental purpose. The superior court denied Green's motion, and Green now appeals that decision.

On appeal, Green acknowledges that there is a "legitimate governmental purpose" for AS 04.16.051(d)(2) — *i.e.*, deterring an adult from providing alcohol to a person under age twenty-one in order to promote public safety. However, he renews his argument that this provision bears "no reasonable relationship to a legitimate governmental purpose" because it "does not require any nexus between the alcohol and the negligent act that caused serious physical injury or death."[52]

We disagree with the notion that the statute does not require a nexus between the recipient's intoxication and the negligent act. We acknowledge that the plain language of the statute requires only that the recipient of the alcoholic beverage cause serious physical injury or death "*while* under the influence" of that alcoholic beverage. The provision does not explicitly require that the negligent act occur *as a result of* the fact that the recipient was under the influence of the alcohol received.

But during the legislative committee hearings on House Bill 330 in 2002, multiple legislators expressed concern about the absence of a causal nexus between the recipient's impairment and the harmful act that resulted in death or serious physical injury.[53] In response, Assistant Attorney General Carpeneti stated that the conditions

---

[52]   *See Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974) (recognizing that "[s]ubstantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose").

[53]   *See, e.g.*, Audio of House Finance Committee, House Bill 330, statement of Representative Eric Croft, Tape HFC-02, #33, at 8:54 – 9:52 (Feb. 28, 2002) (expressing concern that the plain language of the statute did not contain a "nexus" between the recipient's intoxication and the recipient's negligence); Audio of House Finance Committee, House Bill 330, statement of Representative John Davies, Tape HFC-02, #33, at 46:15 – 46:50 (Feb. 28, 2002) (proposing an amendment that would have clarified that the negligent
(continued...)

*were* in fact connected — and that "the intent [of the new provision] was . . . to cover situations where people furnish alcohol to minors and [the minors] go out and hurt people *because of* their alcoholic intoxication."[54]   Later in the same hearing, Ms. Carpeneti reiterated that "the clear intent is that the injury is related to the [recipient being] 'under the influence.'"[55]   And at the Senate Judiciary Committee hearing on the bill, both Ms. Carpeneti and Senator Robin Taylor, the chair of the committee,

<hr />

[53]   (...continued)
actions of the recipient occurred "as a result of being" under the influence, thereby "tighten[ing] the nexus" in the statute); Audio of House Judiciary Committee, House Bill 330, statement of Representative Ethan Berkowitz, Tape 02-15, at 51:17 – 51:49 (Feb. 11, 2002) (proposing an amendment stating that the physical injury or death occurred "because" the person under twenty-one years of age was under the influence of the alcoholic beverage received).  The proposed amendments were rejected, but not because the legislators believed that there was no causal connection or nexus between the intoxicated state and the negligent act.  *See* Audio of House Finance Committee, House Bill 330, statement of Assistant Attorney General Anne Carpeneti, Tape HFC-02, #33, at 48:27 – 48:45 (Feb. 28, 2002) (expressing concern that Representative Davies's proposed language would require proof that a specific alcoholic drink caused the minor's negligent actions in circumstances where the minor received alcohol from multiple furnishers).

[54]   Audio of House Finance Committee, House Bill 330, statement of Assistant Attorney General Anne Carpeneti, Tape HFC-02, #33, at 9:52 – 10:27, 25:42 – 25:55 (Feb. 28, 2002); *see also* Audio of House Judiciary Committee, House Bill 330, statement of Assistant Attorney General Anne Carpeneti, Tape 02-15, at 1:22:16 – 1:22:30 (Feb. 11, 2002) (noting that a person could not be charged with a felony if the recipient of the alcohol gets into an accident that was not his or her fault, despite being under the influence); Audio of House Finance Committee, House Bill 330, statement of Representative Norman Rokeberg, Tape HFC-02, #33, at 11:47 – 12:20 (Feb. 28, 2002) (explaining that previous versions of the bill connected the minor's negligence and "under the influence" and that the intent was to maintain a nexus).

[55]   Audio of House Finance Committee, House Bill 330, statement of Assistant Attorney General Anne Carpeneti, Tape HFC-02, #33, at 25:40 – 25:49 (Feb. 28, 2002).

emphasized the existence of a nexus.[56]  Indeed, we agree with Green that, in order to hold a defendant liable under these circumstances, such a nexus is very likely required by due process.

But the facts of Green's case fall squarely within the statute's purpose — and Green has never disputed that the alcohol he provided played a crucial role in the car accident and resulting injuries.  Because the statute is constitutional as applied to Green,[57] and because the legislative history makes clear that the phrase "while under the influence" is intended to establish the requisite nexus between the alcohol furnished and the negligent act, we uphold the superior court's decision denying Green's motion to dismiss the indictment on this ground.

*Conclusion*

We REVERSE Green's convictions.  If the State elects to retry Green, the jury instructions shall reflect the appropriate mental state requirements set out in this opinion.

---

[56]  *See* Audio of Senate Judiciary Committee, House Bill 330, statements of Assistant Attorney General Anne Carpeneti and Senator Robin Taylor, Tape 02-26, at 17:39 – 18:34 (May 6, 2002).

[57]  *See State v. ACLU of Alaska*, 204 P.3d 364, 372 (Alaska 2009) (explaining that a statute may be unconstitutional as-applied when it is unconstitutional "under the facts of the case" but may be constitutional "[u]nder other facts"); *Petersen v. State*, 930 P.2d 414, 429 (Alaska App. 1996) (finding a criminal stalking statute constitutional as applied to the defendants, despite potential constitutional problems if applied in other circumstances).